W. F. LEE AND MINNIE LEAH P. LEE, HIS WIFE, v. BOARD OF ADJUST-
MENT UNDER ZONING ORDINANCE OF THE CITY OF ROCKY MOUNT.

IN RE APPLICATION OF S. L. EDMONDSON FOR PERMIT TO BUILD STORE AND
GASOLINE FILLING STATION IN THE CITY OF ROCKY MOUNT.

(Filed 27 February, 1946.)

**1. Municipal Corporations § 37—**

A decision of a municipal board of adjustment is reviewable solely for
errors of law on the evidence presented by the record itself. G. S.,
160-178.

**2. Appeal and Error § 40a—**

An exception to the judgment presents the single question whether the
facts found and admitted are sufficient to support the judgment rendered.

**3. Municipal Corporations § 37—**

Since an optionee has no present right to erect a building on the land,
the withholding of a building permit from him cannot in law impose any
"undue and unnecessary hardship" upon him as a predicate for relief
from an order of a municipal board of adjustment. G. S., 160-178.

**4. Same—**

"Unnecessary hardship" as used in G. S., 160-178, does not mean a
pecuniary loss to a single owner in being denied a building permit for a
nonconforming structure pursuant to zoning regulations binding upon all
alike.

5. Same—

    A municipal board of adjustment is an administrative agency which acts in a *quasi*-judicial capacity, and its authority to grant variance permits in exceptional cases is limited to such as are consonant with the general purpose and spirit of the zoning regulations, and it has no authority to amend the zoning regulations and permit the erection of a nonconforming structure, it being the sole function of the legislative body of the municipality to alter the zoning districts for changed conditions. G. S., 160-172, G. S., 160-178.

6. Same—

    Any owner whose property is affected has the right to apply to the courts for review of an order of a municipal board of adjustment. G. S., 160-178.

APPEAL by petitioners from *Bone, J.,* at January Term, 1946, of EDGECOMBE.

Petition for writ of *certiorari* to review an order of the Board of Adjustment of the City of Rocky Mount.

Rocky Mount has a zoning ordinance which creates a district for residential purposes only, designated as Zone 5. The ordinance prohibits the erection within said zone of any structure which is "intended or designed to be used, in whole or in part, for any industrial, manufacturing, trade or commercial purpose" with certain exceptions not pertinent to this appeal.

H. H. Duke, Jr., owns a lot located at the corner of Daughtry Street and Highway 64 directly in front of the residence of petitioners and within said zone. He gave an option to purchase to S. L. Edmondson, who thereupon applied to the City Building Inspector for a permit to erect thereon buildings suitable for and to be used as a grocery store-service station. The Building Inspector declined to issue the permit for the reason that the proposed buildings are designed to be used for a nonconforming purpose. Edmondson appealed to the City Board of Adjustment.

The Board of Adjustment heard the appeal, resisted by 40-odd owners of property in Zone 5, and "concluded that to reject this permit would work a great hardship on the applicant, and that no damage would be sustained by adjoining property owners if the permit were granted." It thereupon ordered, by unanimous vote, "that permit be issued by the Building Inspector allowing the two buildings to be erected as above set out."

On application of petitioners Lee and wife, Bone, J., on 23 January, 1946, issued a writ of *certiorari* returnable before him immediately. The Board of Adjustment made immediate answer to the writ as required by the order and the cause came on for hearing 24 January, 1946,

at which time judgment was entered affirming the order of the Board of Adjustment so that "the applicant, S. L. Edmondson, be, and he is hereby authorized to immediately begin the construction of his store and service station, in accordance with the permission granted in said order of the Board of Adjustment."

It was further ordered that the "action" be dismissed at the cost of the petitioners. Petitioners excepted and appealed.

*Wilkinson & King and Battle, Winslow & Merrell for plaintiffs, appellants.*

*F. S. Spruill for respondent, appellee.*

BARNHILL, J. The statute, G. S., Art. 14, ch. 160, under authority of which Rocky Mount adopted its zoning ordinance, provides that every decision of the Board of Adjustment shall be subject to review by proceedings in the nature of *certiorari*. G. S., 160-178. But the writ of *certiorari* as permitted by this statute is a writ to bring the matter before the court upon the evidence presented by the record itself for review of alleged errors of law. *In re Pine Hill Cemeteries, Inc.,* 219 N. C., 735, 15 S. E. (2d), 1.

The decisions of the board are final, subject to the right of the courts to review errors in law and to give relief against its orders which are arbitrary, oppressive, or attended with manifest abuse of authority. *Harden v. Raleigh,* 192 N. C., 395, 135 S. E., 151; *In re Parker,* 214 N. C., 51, 197 S. E., 706; *In re Pine Hill Cemeteries, Inc., supra; Pue v. Hood,* 222 N. C., 310, 22 S. E. (2d), 896; *Mullen v. Louisburg,* 225 N. C., 53.

Likewise an exception to the judgment presents the single question whether the facts found and admitted are sufficient to support the judgment entered. *Rader v. Coach Co.,* 225 N. C., 537; *Fox v. Mills, Inc.,* 225 N. C., 580.

So then decision here must rest upon the facts as they appear upon the face of the record. These facts are as heretofore stated.

Do they disclose that (1) the conclusion of the Board of Adjustment that to reject the application for a permit to erect nonconforming buildings upon the lot, for the purchase of which applicant holds an option, would work a great hardship on him is unwarranted and erroneous as a matter of law; (2) the Board of Adjustment exceeded its authority in permitting the erection of buildings intended and designed to be used for trade and commercial purposes on a lot located within a district zoned for residences only?

These are the real questions posed for decision. We are constrained to answer each in the affirmative.

In the issuing of building permits the building inspector, a purely administrative agent, must follow the literal provisions of the zoning regulations. The statute, G. S., 160-172, authorizes and the municipal board created a Board of Adjustment so that an applicant who thinks he requires some amelioration of the strict letter of the law may have a forum in which he may be heard.

Acting upon its interpretation of the statute authorizing its creation, G. S., 160-172, the Board of Adjustment, upon the appeal of the respondent, "concluded that to reject this permit would work a great hardship on the applicant," and ordered that a permit issue. In this there was error.

An option in relation to land grants the right to elect, within a stipulated period, to buy or not to buy. The applicant optionee merely has the right of choice granted by his option. He possesses no present right to erect a building on the lot described in his contract. To withhold from him a permit to do what he has no present right to do cannot, in law, impose an "undue and unnecessary hardship" upon him.

The appellants in their brief express it in this manner: "Edmondson cannot be hurt or suffer any hardship whichever way the case goes. He uses a long-handle spoon (option) to sample the Edgemont pot. If the mixture is too hot for him he can drop the spoon." Be that as it may, the withholding of a permit to build imposes no undue hardship upon him so long as he has no present right to build.

Even if it be conceded that the applicant occupies a position which entitles him to apply for a building permit, its denial, on this record, imposes no unnecessary hardship.

"The courts have . . . gradually concluded that the deprivation of better earning by means of a nonconforming use is not an unnecessary hardship within the meaning of the law. Value is not the proper criterion." Bassett, Zoning, 127; *Elizabeth City v. Aydlett,* 201 N. C., 602, 161 S. E., 78. It is erroneous to base a conclusion that the denial of an application would work an unnecessary hardship because the applicant could earn a better income from the type of building proposed. Bassett, Zoning, 143.

The financial situation or pecuniary hardship of a single owner affords no adequate grounds for putting forth this extraordinary power affecting other property owners as well as the public. *In re Parker, supra; Prusik v. Board of Appeal,* 160 N. E., 312 (Mass.); *Thayer v. Board of Appeals,* 157 Atl., 273 (Mass.); *Norcross v. Board of Appeal,* 255 Mass., 157, 150 N. E., 887; *People v. Walsh,* 227 N. Y. S., 570; *In re Mark Block Holding Corp.,* 253 N. Y. S., 321.

"Unnecessary hardship" as used in the statute does not embrace the restriction of the desire to perform an act which would abrogate the very

intent and purpose of the ordinance, amend, if not partially repeal, an act regularly adopted by the local Legislature, and create a means by which the entire ordinance could be frustrated at will by limitless exceptions. *In re Mark Block Holding Corp., supra.* It cannot be construed to include a hardship imposed upon all alike so as to effectuate the primary purpose and intent of the legislative body. *Elizabeth City v. Aydlett, supra.*

The board of adjustment authorized in the zoning statute, G. S., 160-178, is an administrative agency, acting in a *quasi*-judicial capacity. *In re Pine Hill Cemeteries, supra.* Its main function is to grant variance permits in exceptional cases, subject to court review. G. S., 160-178. In the exercise of this discretion, however, it is not left free to make any determination whatever that appeals to its sense of justice. It must abide by and comply with the rules of conduct provided by its charter—the local ordinance enacted in accord with and by permission of the State zoning law.

Indeed the power of the board is expressly limited by the statute. It may "determine and vary" the application of the zoning regulations as set forth in the ordinance. G. S., 160-172. And upon hearing on appeal from the building inspector it may vary or modify any of the regulations and provisions of such ordinance relating to the use, construction or alteration of buildings or structures or the use of land. G. S., 160-178. However, the determination, variation or application must be "in harmony with their general purpose and intent and in accordance with general or specific rules therein contained," G. S., 160-172, "so that the spirit of the ordinance shall be observed, public safety and welfare secured, and substantial justice done." G. S., 160-178; Baker, Legal Aspects of Zoning, 98; Bassett, Zoning, 131-132.

Thus the power to "determine and vary" is limited to such variations and modifications as are in harmony with the general purpose and intent of the ordinance and do no violence to its spirit.

The plain intent and purpose of the statute is to permit, through the Board of Adjustment, the amelioration of the rigors of necessarily general zoning regulations by eliminating the necessity for a slavish adherence to the precise letter of the regulations where, in a given case, little or no good on the one side and undue hardship on the other would result from a literal enforcement.

The board cannot disregard the provisions of the statute or its regulations. It can merely "vary" them to prevent injustice when the strict letter of the provisions would work "unnecessary hardship." *People v. Clarke,* 215 N. Y. S., 190; *People v. Walsh,* 208 N. Y. S., 571; *People v. Walsh,* 195 N. Y. S., 264; *Welch v. Swasey,* 193 Mass., 364, 79 N. E., 745; Metzenbaum, Law of Zoning, 259; Bassett, Zoning, 120-121.

In the absence of a zoning ordinance a mill or junk yard, a butcher shop or factory, a paint establishment, a grocery, bakery, repair or tin shop owner may locate his business in a residential section even while that district is in its prime, and, overnight, by such intrusion, drain away a considerable portion of the value of neighboring parcels. Every residence section is open to garages and filling stations, and sometimes an entire block of houses is reduced in value and made less desirable as residence property by the advent of one of them.

Whether and to what extent such problems in a given city or town are to be met by the adoption of zoning ordinances rests peculiarly within the discretion of the legislative branch of the municipality.

But the Board of Adjustment is not a law-making body. The statute, G. S., 160-172, G. S., 160-178, cedes it no legislative authority. Hence it has no power to amend the ordinance under which it functions. *Welch v. Swasey, supra;* Baker, Legal Aspects of Zoning, 98.

No power to convert a residential section into a business district or to permit business establishments to invade residential sections is conferred. Therefore it cannot permit a type of business or building prohibited by the ordinance, for to do so would be an amendment of the law and not a variance of its regulations. *South Ozone Park Lumber & Supply Corp. v. Board of Appeals,* 241 N. Y. S., 810; *People v. Miller,* 176 N. Y. S., 206; *Heffernan v. Zoning Board of Review,* 144 Atl., 674 (R. I.); *S. v. Kansas City,* 27 S. W. (2d), 1030 (Mo.); *Civil City of Indianapolis v. Ostrom R. & Const. Co.,* 176 N. E., 226 (Ind.); *Livingston v. Peterson,* 228 N. W., 816 (N. D.).

As the new building and its use must harmonize with the spirit and purpose of the ordinance, Bassett, Zoning, 128, no variance is lawful which does precisely what a change of map would accomplish. It follows that the privilege to erect a nonconforming building or a building for a nonconforming use may not be granted under the guise of a variance permit. Bassett, Zoning, 201. Action to that effect is in direct conflict with the general purpose and intent of the ordinance and does violence to its spirit.

When such substantial changes become advisable they must be made by the legislative body of the municipality which alone can change the map and allow a business center in a residential section. It is a legislative matter and not a situation for a variance permit. Bassett, Zoning, 125.

So then the case boils down to this. The lot at the corner of Daughtry Street and Highway 64 in Rocky Mount is within a residential zone. The Board of Adjustment "rezoned" it for a business purpose. Thus it amended the ordinance. This it had no authority to do. Its action was without warrant in law and is a nullity.

This conclusion imports no imputation that the members of the Board of Adjustment, known to the writer as men of high character and sound judgment, acted arbitrarily or in bad faith. They simply misconstrued the meaning of the language used in the statute and as a consequence exceeded the authority vested in them.

While there was no motion to dismiss, the appellee suggests that the court below dismissed for the reason that petitioners have no right to challenge the action of the board or to seek a review of its ruling. This contention is not sustained by the record. The court below affirmed the order of the board and directed the issuance of the proposed permit—a decree permissible only in a properly constituted cause.

The Act provides that any aggrieved party may appeal from a ruling of the building inspector to the Board of Adjustment and that every decision of such board shall be subject to review by proceedings in the nature of *certiorari*. This necessarily implies that a property owner whose property is affected by the proposed change may seek review. Bassett, Zoning, 123, 154; *Michigan-Lake Bldg. Corp. v. Hamilton,* 172 N. E., 710 (Ill.); *Harper v. Board of Appeals,* 171 N. E., 430 (Mass.); *Breese v. Hutchins,* 165 Atl., 94 (N. J.). We have impliedly so held. *Little v. Raleigh,* 195 N. C., 793, 143 S. E., 827; *In re Pine Hill Cemeteries, Inc., supra.*

The judgment below is

Reversed.